UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FIDUS MEZZANINE CAPITAL, L.P.,
                           Plaintiff,

-v-

FIBERS PLUS, LLC f/k/a UNITED
FIBERS, LLC,
                           Defendant.

24-CV-3452 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff Fidus Mezzanine Capital, L.P. ("Fidus") brings this action against Defendant Fibers Plus, LLC f/k/a United Fibers, LLC ("United Fibers") for breach of contract and declaratory judgment. Before the Court is Defendant's motion to dismiss the amended complaint for failure to state a claim. For the reasons that follow, the motion is denied.

**I.    Background**

    **A.    Factual Background**

    The following facts are taken from Plaintiffs' amended complaint and are assumed true for purposes of resolving this motion to dismiss. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

    On June 27, 2014, United Fibers sold certain assets of its cellulose insulation manufacturing business to SW Fibers, LLC ("SWF") pursuant to an Asset Purchase Agreement. (ECF No. 29 ("Am. Compl.") ¶ 11.) At the closing, "SWF paid $7,000,000 in cash and delivered to United Fibers a promissory note for $2,987,893" (the "UF Note"). (*Id.* ¶ 12.) The UF Note was secured by a Commercial Security Agreement executed by SWF (the "UF Security Agreement"). (*Id.*) SWF's parent company, GF Investors, LLC ("GFI"), guaranteed the UF Note. (*Id.* ¶¶ 9, 13.)

On July 3, 2014, Fidus, as a lender and collateral agent for other lenders (collectively, the "Lenders"), entered into a Senior Subordinated Credit Agreement ("the Fidus Credit Agreement") with SWF, US Greenfiber, LLC ("USG"), certain affiliated companies, and GFI as the guarantor (collectively, the "Grantors"). (*Id.* ¶¶ 1, 9.) Under the Fidus Credit Agreement, the Lenders loaned $10 million to fund, *inter alia*, "a portion of the purchase price" under the Asset Purchase Agreement. (*Id.* ¶ 9; ECF No. 29-1 ("FCA") § 6.11, sched. 1.1.) As collateral for the loans, the Lenders obtained "first-priority liens on substantially all of the assets of the Grantors, including the collateral that SWF pledged to secure the UF Note." (Am. Compl. ¶ 14.)

On the same day, United Fibers and Fidus entered into an Intercreditor Agreement "to establish and confirm the relative priority of their respective security interests on the assets of the Grantors." (*Id.* ¶ 15.) The Intercreditor Agreement distinguished between "First Lien Debt" secured by "First Lien Priority Collateral" and "Seller Debt" secured by "Seller Collateral." (*Id.* ¶ 18.) "First Lien Debt" was defined in relevant part as "all Obligations . . . and all other amounts owing, due, or secured under the terms of the First Lien Credit Agreement or any other First Lien Document, whether now existing or arising hereafter." (ECF 29-5 ("ICA") at 6.) "First Lien Credit Agreement" was in turn defined as the Fidus Credit Agreement "as . . . may be modified, amended, supplemented and restated from time to time." (*Id.*) "Seller Debt," on the other hand, meant "all obligations and other amounts owing or due by any Grantor to Seller, whether now existing or arising hereafter."[1] (*Id.* at 9.) "Seller Collateral" referred to assets that United Fibers sold to SWF, as identified in Exhibit A to the Intercreditor Agreement (Am. Compl. ¶ 20), while "First Lien Priority Collateral" consisted of all of the Grantors' assets excluding Seller Collateral (*id.* ¶ 19). In the Intercreditor Agreement, Fidus, on behalf of the

---

[1] "Seller" in the Intercreditor Agreement referred to United Fibers. (ICA at 2.)

Lenders, "agreed to subordinate Lenders' first-priority security interest in the Seller Collateral to United Fibers." (*Id.* ¶ 21.) In exchange, United Fibers "agreed not to exercise any rights or remedies with respect to any First Lien Priority Collateral or any Seller Debt until the First Lien Debt was paid in full." (*Id.* ¶ 22.) The Intercreditor Agreement also provided:

> [The Lenders] may, at any time and from time to time in accordance with the First Lien Documents or applicable law, *without the consent of, or notice to, Seller* without incurring any liabilities to Seller and without impairing or releasing the Lien priorities and other benefits provided in this Agreement (even if any right of subrogation or other right or remedy of Seller is affected, impaired, or extinguished thereby) . . . *amend, renew, exchange, increase, or alter, the terms of any of the First Lien Debt or any Lien on any First Lien Priority Collateral* . . . .

(ICA § 7.3(c) (emphasis added).) Finally, the Intercreditor Agreement specified that it "shall terminate . . . with respect to provisions herein that are for the benefit of the [Lenders], on the date that the Payment in Full of First Lien Debt has occurred." (*Id.* § 9.2(a).)

Subsequently, Fidus extended additional loans of more than $28 million under the Fidus Credit Agreement. (Am. Compl. ¶ 28.) And in March 2016, "SWF delivered a second secured promissory note to United Fibers for $2,025,000 in connection with an earnout payment provided under the Asset Purchase Agreement." (*Id.* ¶ 30.) On March 10, 2016, Fidus and United Fibers amended the Intercreditor Agreement to account for this earnout note. (*Id.*)

In 2019, United Fibers sued SWF and GFI in Arizona state court for breach of the UF Note and UF Security Agreement. (*Id.* ¶ 33.) In that action, United Fibers "foreclosed on all of the assets constituting Seller Collateral" and obtained "default judgments against SWF and GFI for the deficiency." (*Id.*) Then, on May 4, 2021, United Fibers filed a second action in Arizona state court, "assert[ing] claims against USG, SWF, and GFI for alter ego, successor liability, fraudulent conveyance, and breach of fiduciary duty," and seeking to make USG responsible for its previous judgment against SWF and GFI. (*Id.* ¶ 37.)

By December 2021, USG and its affiliates had over $50 million in outstanding debt, more than $38 million of which was owed to the Lenders. (*Id.* ¶ 38.) "On December 31, 2021, USG and its affiliates (not including SWF or GFI) sold substantially all of their assets to a third party." (*Id.*) That transaction resulted in partial satisfaction of the First Lien Debt, but the Lenders were still owed more than $10 million. (*Id.*) Thereafter, USG defaulted in the second Arizona action, and United Fibers obtained a judgment for over $5.9 million. (*Id.* ¶ 40.) United Fibers then "sought to enforce its default judgment against USG by seeking post-judgment discovery from representatives of Fidus and . . . other Lenders." (*Id.* ¶ 41.) It also threatened "to file suit against Fidus and its affiliates to collect on United Fibers' default judgment against USG." (*Id.* ¶ 43.)

### B. Procedural History

Plaintiff commenced this action on May 3, 2024, alleging that United Fibers breached the Intercreditor Agreement and seeking a declaratory judgment barring United Fibers from further violations. (ECF No. 1.) On July 31, 2024, Defendant moved to dismiss the complaint for failure to state a claim (ECF No. 22) and filed a supporting memorandum of law (ECF No. 23 ("Mem.")). On August 21, 2024, Plaintiff filed an amended complaint. (Am. Compl.) On August 28, 2024, Defendant indicated its intent to rely on the initially filed motion to dismiss. (ECF No. 30.) Plaintiff opposed the motion to dismiss on September 30, 2024 (ECF No. 33 ("Opp.")), and Defendant replied in further support of its motion on November 4, 2024 (ECF No. 36 ("Reply")). On November 18, 2024, the Court granted the parties' motions for leave to file surreplies. (ECF Nos. 39, 40.) Plaintiff filed a surreply on November 22, 2024. (ECF No. 41 ("SR").) Defendant filed a sur-surreply on November 26, 2024. (ECF No. 42 ("SSR").)

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### III. Discussion

Across its multiple filings, Defendant raises four arguments in support of its motion to dismiss: (1) that the Intercreditor Agreement has terminated; (2) that the Intercreditor Agreement lacked consideration; (3) that Fidus breached its duty of good faith and fair dealing, and (4) that United Fibers did not breach the Intercreditor Agreement. (*See* Mem. at 8-12; Reply at 5; SSR at 2-4.) None of these arguments has merit.

#### A. Termination

First, Defendant argues that the Intercreditor Agreement terminated by its terms, because "[i]n the absence of the additional $28 million in advances, the First Lienholder was otherwise satisfied by the time of the 2021 sale." (Mem. at 8.) Such counterfactual speculation is irrelevant. The Intercreditor Agreement provided: "This Agreement shall terminate and be of no further force and effect . . . with respect to provisions herein that are for the benefit of the [Lenders], on the date that the Payment in Full of First Lien Debt has occurred." (ICA § 9.2(a).) As relevant here, "Payment in Full of First Lien Debt" is defined as "(a) payment in U.S. Dollars in full in cash or immediately available funds of all of the First Lien Debt;" and "(b) termination

or expiration of all commitments, if any, of the First Lien Lenders to extend credit to Borrowers."[2] (*Id.* at 8.) Based on the amended complaint, these conditions have not occurred.

According to the Intercreditor Agreement, "First Lien Debt" included obligations, "whether now existing or arising hereafter," owed under the Fidus Credit Agreement "as . . . may be modified, amended, supplemented and restated from time to time." (*Id.* at 6.) Fidus alleges that "[a]fter entry of the Fidus Creditor Agreement and the Intercreditor Agreement, Fidus did make additional secured loans and protective advances under the Fidus Credit Agreement of more than $28 million (for total extensions of credit totaling more than $38 million)." (Am. Compl. ¶ 28; *see also id.* ¶ 9 ("[S]ince the initial loans in 2014, pursuant to certain amendments, additional advances have been made under the Fidus Credit Agreement.").) By December 2021, all $38 million debt to the Lenders remained outstanding. (*Id.* ¶ 38.) Following the 2021 asset sale, the Lenders were still "owed more than $10 million in First Lien Debt under the Fidus Credit Agreement." (*Id.*) Based on the amended complaint, at no point did the Grantors pay "all of the First Lien Debt." (ICA at 8.)[3] Thus, the Court cannot conclude as a matter of law that the Intercreditor Agreement has terminated.

---

[2] "Borrowers" in the Intercreditor Agreement referred to USG, SWF, and other related companies. (ICA at 3; *see* Am. Compl. ¶¶ 1, 9.)

[3] Defendant cannot establish that condition (b) is satisfied either. Defendant argues that the Lenders' commitments under the July 3, 2014 Fidus Credit Agreement had terminated upon making the $10 million loan. (Reply at 4 (quoting FCA § 2.4(c)).) However, based on the alleged amendments providing for additional loans (*see* Am. Compl. ¶ 9), the Lenders' commitment under the initial Fidus Credit Agreement does not constitute "all commitments . . . of the First Lien Lenders to extend credit to Borrowers" (ICA at 8). Contrary to United Fibers' demand (*see* Reply 4-5, SSR at 2), Fidus is not required to attach voluminous amendments of the Fidus Credit Agreement to its amended complaint (*see* SR at 2 n.2).

B.     **Consideration**

Second, Defendant argues that the Intercreditor Agreement is unenforceable because it "lacks mutuality of consideration" and Fidus's "promises are illusory." (Mem. at 9, 10 (capitalization altered).)  Under New York law,[4] "[c]onsideration to support an agreement exists where there is 'either a benefit to the promisor or a detriment to the promisee.'" *Genger v. Genger*, 76 F. Supp. 3d 488, 498 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x 44 (2d Cir. 2016) (summary order) (quoting *Hollander v. Lipman*, 885 N.Y.S.2d 354, 355 (2nd Dep't 2009)). "Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny." *Apfel v. Prudential-Bache Sec. Inc.*, 81 N.Y.2d 470, 476 (1993). "An illusory contract—that is, an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation—is unenforceable." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 684 (2017) (cleaned up). But "a contract is not illusory merely because its terms give discretion to one party to the contract." *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84 (2d Cir. 2013) (summary order).

Here, United Fibers benefited from the Intercreditor Agreement. Prior to this contract, the Lenders allegedly held "first-priority liens on substantially all of the assets of the Grantors, including the collateral that SWF pledged to secure the UF Note." (Am. Compl. ¶ 14.) Then, in the Intercreditor Agreement, the Lenders "agreed to subordinate Lenders' first-priority security interest in the Seller Collateral to United Fibers." (*Id.* ¶ 21.) The Intercreditor Agreement

---

[4] The Intercreditor Agreement provided that "this Agreement, the construction, interpretation, and enforcement hereof, and the rights of the parties hereto with respect to all matters arising hereunder or related hereto shall be determined under, governed by, and construed in accordance with the law of the State of New York." (ICA § 9.9 (capitalization altered).) Such choice-of-law clause is controlling. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462, 474 (2024).

provided, within certain limits, that "[u]ntil the Payment in Full of Seller Debt has occurred," Fidus would not "exercise or seek to exercise any rights or remedies with respect to the Seller Collateral," or "contest, protest, or object to any Enforcement action by Seller with respect to the Seller Collateral." (ICA § 3.3.) In addition, "Fidus loaned the money that allowed SWF to pay United Fibers $7 million in cash under the 2014 asset sale." (Opp. at 20; *see* FCA § 6.11 ("[T]he proceeds of the Loan [shall be used] to pay (or refinance) a portion of the purchase price under the Initial Acquisition Agreements . . . ."); *id.* at 83, 102 (defining "Initial Acquisition Agreements" to include the SWF-United Fibers Asset Purchase Agreement).)

Defendant does not dispute that it received these benefits under the Intercreditor Agreement. Nor does it argue fraud or unconscionability to challenge the adequacy of consideration.[5] Instead, Defendant contends that Fidus's promises are illusory, because Fidus's unlimited borrowing capacity and lack of reporting requirements, coupled with United Fibers's conditional recovery, "give Fidus significant discretion to manipulate the agreement in a way that could perpetually prevent United Fibers from exercising its rights under the Guaranty." (Mem. at 10.) But "a contract is not illusory merely because its terms give discretion to one party to the contract, as every contract encompasses the implied duty of good faith and fair dealing." *Lebowitz*, 508 F. App'x at 84 (citation omitted); *see also S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 507 (S.D.N.Y. 2021) ("[W]here . . . it is necessary to read an obligation of good faith in order to avoid rendering a contract promise illusory . . . the

---

[5] Defendant's citation to cases that hold "[a] clause which totally exonerates one party from liability for breach of a contract renders the contract unenforceable" (Mem. at 10) is inapposite. No such clause exists in the Intercreditor Agreement. As Plaintiff correctly points out, "[h]ad Fidus attempted to recover against the Seller Collateral in contravention of the Intercreditor Agreement's terms, United Fibers could have accused Fidus of breaching the Intercreditor Agreement." (Opp. at 19; *see* ICA § 3.3.)

courts will not hesitate to infer an obligation to act in good faith."). Since Fidus has subordinated its priority rights to recover from Seller Collateral and is bound by a duty of good faith and fair dealing, Fidus's promise was not "so insubstantial as to impose no obligation." *Lend Lease*, 28 N.Y.3d at 684. Defendant's unenforceability argument fails.

### C. Good Faith and Fair Dealing

Third, Defendant contends that "[a]s interpreted by Plaintiff, the ICA violates the duty of good faith and fair dealing implied in every contract." (Mem. at 11 (capitalization altered).) For starters, only a party, not a contract, can violate the duty of good faith and fair dealing. *See Moran v. Erk*, 11 N.Y.3d 452, 456 (2008) ("The implied covenant of good faith and fair dealing between parties to a contract embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (quotation marks omitted)). From the amended complaint, the only discernible act by Fidus—other than executing the Intercreditor Agreement—that Defendant asserts to have "perpetually subordinate[d] United Fibers' position" in bad faith (Mem. at 12) is that Fidus subsequently loaned another $28 million under the Fidus Credit Agreement. (*See* Am. Compl. ¶ 28.) But that is expressly permitted by the Intercreditor Agreement. (*See* ICA § 7.3(c) ("[The Lenders] may, at any time and from time to time . . . , without the consent of, or notice to, Seller . . . amend, renew, exchange, increase, or alter, the terms of any of the First Lien Debt . . . .").) In such cases, "[t]he Court cannot employ the covenant of good faith and fair dealing to impose on the parties obligations that are inconsistent with the express terms of the Intercreditor Agreement." *Cf. In re Musicland Holding Corp.*, 386 B.R. 428, 439 (S.D.N.Y. 2008), *aff'd*, 318 F. App'x 36 (2d Cir. 2009) (summary order) (holding that senior creditors did not breach the covenant of good faith and fair dealing by adding a term loan where the intercreditor agreement expressly provided for such amendment). Absent additional facts about

the parties' course of performance, the Court cannot conclude that Fidus breached the implied covenant of good faith and fair dealing as a matter of law.

### D. Breach

Finally, Defendant argues that it did not breach the Intercreditor Agreement, because in the second Arizona action, it sought relief based on a separate Supply Agreement in addition to the UF Note and UF Security Agreement. (Reply at 7; *see* ECF No. 36-1 at 3-8.) This argument fails for two reasons. First, it does not defeat Fidus's claim that United Fibers breached the Intercreditor Agreement by seeking to enforce the UF Note and UF Security Agreement portions of its Arizona judgment. (*See* Am. Compl. ¶ 41.) Second, as relevant here, the Intercreditor Agreement prohibited United Fibers from "seek[ing] to exercise any rights or remedies with respect to . . . any Seller Debt" before the Lenders were paid in full (ICA § 3.2(a)), and it defined "Seller Debt" to include "all obligations and other amounts owing or due by any Grantor to Seller, whether now existing or arising hereafter" (*id.* at 9). All three defendants in the second Arizona action (USG, SWF, and GFI) are "Grantors" under the Intercreditor Agreement (*see id.* at 3, 7), and any obligation they owed United Fibers under a Supply Agreement would fall within the definition of "Seller Debt."[6] Thus, Defendant has failed to establish that it was not in breach of the Intercreditor Agreement.

Accordingly, Plaintiff has stated a claim for breach of contract and declaratory judgment.

---

[6] Contrary to Defendant's contention, the fact that "the First Amended Complaint does not link the Supply Agreement or unpaid invoices to the [Intercreditor Agreement] in any way" (SSR at 2) is immaterial, because the Intercreditor Agreement itself supported this linkage. And whether or not Fidus's position "would render the Supply Agreement an illusory promise lacking mutual consideration" (*id.* at 3) is not relevant for present purposes, as the Supply Agreement is not at issue or even mentioned in the amended complaint.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

Defendants shall file an answer to the amended complaint within fourteen days after the date of this opinion and order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motion at Docket Number 22.

SO ORDERED.

Dated: March 25, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge